DCP:LHE/JL
F. #2021R00136

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   - against -<br><br>JEBARA IGBARA,<br>     also known as "Jay Mazini,"<br><br>               Defendant. | I N F O R M A T I O N<br><br>Cr. No. 22-424 (FB) (PK)<br>(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),<br> 982(b)(1), 1343, 1349, 1956(a)(1)(A)(i),<br> 2 and 3551 et seq.; T. 21, U.S.C.,<br> § 853(p); T. 28, U.S.C., § 2461(c)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.      The Defendant and a Relevant Individual

1.      The defendant JEBARA IGBARA, also known as "Jay Mazini," resided in Totowa, New Jersey, and was the owner and user of an Instagram account under the username "Jaymazini."  In approximately March 2021, IGBARA's Instagram account had nearly a million followers.  On his Instagram account, IGBARA depicted himself as a wealthy entrepreneur and investor.  IGBARA used his Instagram account to promote his various businesses, including a clothing line, called Mazini Italy, and a training program for people interested in learning how to trade stocks, called Mazini Academy.  On occasion during the relevant period, IGBARA would post videos of himself handing out substantial gifts of cash to people working at retail establishments such as supermarkets or fast food chains.

2. Individual #1, an individual whose identity is known to the United States Attorney, was a business owner based in Brooklyn, New York.

II. The Halal Capital Scheme

3. In or about and between January 2019 and February 2021, the defendant JEBARA IGBARA perpetrated a scheme to defraud investors and prospective investors in fictitious business opportunities through material misrepresentations and omissions relating to, among other things, the existence of the business opportunities, the intended and actual use of investor funds and the anticipated rates of return.

4. In or around January 2019, the defendant JEBARA IGBARA met Individual #1 at an event at a Muslim center in Staten Island, New York. IGBARA represented himself to Individual #1 as an investor. Shortly after that meeting, IGBARA invited Individual #1 to invest with him and told Individual #1 he would purchase stocks with the investment. Individual #1 invested approximately $100,000 with IGBARA, who told Individual #1 that his investment was successful and provided him documents evidencing that it had generated a return. Shortly after making this investment, Individual #1 and IGBARA decided to start their own investment business, Halal Capital LLC ("Halal Capital").

5. Halal Capital was purportedly created to raise money from investors, who were generally individuals known to Individual #1, and particularly small business owners in the Muslim-American community in New York City. Investors and potential investors were told that the money raised for Halal Capital would be invested in short term investment opportunities, both in the stock market and in other businesses, such as electronics resale and the sale of personal protective equipment. The defendant JEBARA IGBARA and Individual #1 agreed

that Individual #1 would be responsible for raising capital, while IGBARA would be responsible for investing that capital.

6. Investors provided money to Halal Capital predominantly by providing cash to Individual #1, though some investors also invested via wire transfers to the Halal Capital bank account. In total, from 2019 through early 2021, the defendant JEBARA IGBARA and Individual #1 received approximately $8 million to 10 million dollars from investors in Halal Capital.

7. Individual #1 told investors that their investments were for a short, defined period of time, and provided them with forecasted, and at times guaranteed, rates of return on their investments. The information Individual #1 conveyed to investors relating to the terms of their investments and the rates of return was provided to Individual #1 by the defendant JEBARA IGBARA.

8. For example, in or around October 2019, Individual #1 sent a text message to the defendant JEBARA IGBARA asking, "is it safe to say, the return is guaranteed or no? 10% for 50k to 74k; 15% for 75k-99k and 20% for 100k or more[?]," to which IGBARA responded, "[t]he return is guaranteed, and those numbers you showed me are perfect." Likewise, in or around January 2020, IGBARA wrote to Individual #1, "[f]or the next investors, only 8% or 10% guaranteed on a large investment. 8% at $150,000. 10% at $300,000 and up."

9. In reality, the defendant JEBARA IGBARA was not investing the money as promised. Instead, IGBARA used the money for his personal expenses, including luxury vehicles and jewelry, as well as gambling at casinos, and to make payments to earlier investors who were owed money at the end of their purported investment term. IGBARA never told Individual #1, or any of the Halal Capital Investors, that he was not investing the money in the

various investment deals he presented to Individual #1 and was instead misappropriating it and spending it on personal expenses or to make payments to other investors that purportedly reflected a return on their investment.

10. In or around the summer of 2020, the Halal Capital scheme began to collapse when the amount of money coming into Halal Capital from new investors did not cover the payments owed to existing Halal Capital investors. In an attempt to make up the shortfall, the defendant JEBARA IGBARA undertook usurious loans and engaged in further fraudulent conduct, including a scheme to defraud investors in various cryptocurrencies (the "Bitcoin Scheme").

III. Bitcoin Scheme

11. In order to raise money to perpetuate the Halal Capital Scheme, the defendant JEBARA IGBARA utilized his Instagram celebrity to raise funds through the Bitcoin Scheme. Pursuant to the Bitcoin Scheme, the defendant purported to purchase Bitcoin at above-market prices but never paid for the Bitcoin, and instead used fraudulent wire transfer instructions to create the appearance that he had actually paid.

12. From approximately January 2021 to February 2021, Bitcoin increased substantially in price, jumping from a closing price of approximately $29,333 per Bitcoin on January 1, 2021 to $49,248 per Bitcoin on March 1, 2021.[1] Within the same time frame, the defendant JEBARA IGBARA began using his social media accounts, specifically his accounts on Twitter and Instagram, to post offers to buy Bitcoin at above-market prices. For example, on or about February 14, 2021, IGBARA posted to Instagram an offer to buy Bitcoin at $52,500.

---

[1] Unless otherwise noted, Bitcoin prices cited herein are the price at the close of the date in question.

On that day, the market price for Bitcoin ranged from approximately $47,105 to $49,716. Additionally, on or about February 17, 2021, IGBARA posted to Instagram an offer to buy Bitcoin at 3.5% to 5% above its current market price.

13. An individual residing in the Eastern District of New York, whose identity is known to the United States Attorney ("Individual #2"), viewed posts made by the defendant JEBARA IGBARA to his Instagram account in which IGBARA offered to purchase Bitcoin at 5% over market value. Individual #2 observed that IGBARA would at times post responses to inquiries he received from Instagram users asking why IGBARA was willing to pay over market price for Bitcoin, and that IGBARA explained in those responses that Bitcoin exchanges were limiting the quantity of Bitcoin that he could purchase.

14. Several individuals transacted in Bitcoin with the defendant JEBARA IGBARA in response to IGBARA's social media posts. In each instance, IGBARA promised to transfer the U.S. dollars via wire transfers and showed the prospective trading partners either videos or computer screen shots that purported to demonstrate that the promised wire transfers had been transmitted. In fact, with respect to each individual, IGBARA did not send wire transfers in amounts sufficient to pay for the Bitcoin he had received from his counterparty. Instead, IGBARA enlisted a co-conspirator, an individual whose identity is known to the United States Attorney, to use computer software to artificially create fraudulent wire transfer confirmations.

15. One individual who transacted with the defendant JEBARA IGBARA, and whose identity is known to the United States Attorney ("Victim #1"), worked for a company based outside the United States (the "Company"), an entity the identity of which is known to the United States Attorney, that held Bitcoin and was looking to obtain U.S. dollars. Victim #1

contacted IGBARA via his Instagram account and agreed to sell IGBARA Bitcoin. IGBARA promised that he would wire $195,700 in exchange for 5.049 Bitcoin from Victim #1. WhatsApp messages show that on or about January 7, 2021, Victim #1 sent IGBARA a message asking "U send me wire receipt and i send you the coins?" to which IGBARA responded "Of course. Of course I will send the wire confirmation receipt."

16. In connection with the transaction, the defendant JEBARA IGBARA sent Victim #1: (1) a copy of his passport identification page that depicted IGBARA; and (2) a copy of a wire transfer receipt that purportedly reflected a wire transfer, in the amount of approximately $195,700, from a bank account that IGBARA purported to control to a bank account held by the Company. In exchange, on or about January 7, 2021, Victim #1 sent 5.049 Bitcoin to IGBARA's digital currency wallet, the value of which ranged from $183,561 to $203,595 on that day. When no wire transfer was received, Victim #1 contacted IGBARA and inquired further, and IGBARA told Victim #1 that the delay was due to the international nature of the transaction. Victim #1 never received the wire transfer from IGBARA.

17. Another individual whose identity is known to the United States Attorney ("Victim #2") transferred Bitcoin to the defendant JEBARA IGBARA in exchange for promised payments of U.S. dollars that IGBARA never made. In January or February 2021, Victim #2 observed IGBARA's social media posts offering to purchase Bitcoin. In February of 2021, Victim #2 reached out to IGBARA to discuss selling Bitcoin, and the two spoke over a video call. During the call, IGBARA told Victim #2 that he had a personal net worth of $33 million. IGBARA also showed Victim #2, by holding a second phone up to the screen of the video call, an image of a Bitcoin wallet reflecting that IGBARA had purchased $3 to $4 million worth of Bitcoin the previous week.

18.     Victim #2 and the defendant JEBARA IGBARA agreed that Victim #2 would sell IGBARA Bitcoin in a series of transactions.   In connection with those transactions, IGBARA sent Victim #2: (1) an altered screenshot purportedly depicting an approximately $3.135 million wire transfer confirmation from an account controlled by IGBARA to a bank account held by Victim #2 and (2) an image of IGBARA's passport.   In exchange, Victim #2 transferred approximately $750,000 worth of Bitcoin to IGBARA, which Victim #2 intended to be the initial transfer of approximately $3.135 million worth of Bitcoin.   However, Victim #2 never received the wire transfer from IGBARA.

## COUNT ONE
(Wire Fraud – Halal Capital Scheme)

19.     The allegations set forth in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20.     In or about and between October 2019 and February 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEBARA IGBARA, also known as "Jay Mazini," did knowingly and intentionally devise a scheme and artifice to defraud investors in Halal Capital, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate telephone calls and text messages between IGBARA and Individual #1 in the Eastern District of New York pertaining to the terms and nature of Halal Capital investments.

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

## COUNT TWO
### (Wire Fraud Conspiracy – Bitcoin Scheme)

21. The allegations set forth in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

22. In or about and between January and February 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEBARA IGBARA, also known as "Jay Mazini," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more participants in digital currency transactions, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT THREE
### (Money Laundering)

23. The allegations set forth in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

24. In or about and between October 2019 and February 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEBARA IGBARA, also known as "Jay Mazini," did knowingly and intentionally conduct and attempt to conduct one or more financial transactions in and affecting interstate commerce, to wit: crypto currency transactions, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United

States Code, Section 1343, knowing that the property involved in such transactions represented proceeds of some form of unlawful activity, and with the intent to promote the carrying on of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE AND TWO

25. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT THREE

27. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2021R00136
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JEBARA IGBARA,

Defendant.

# INFORMATION

(T. 18, U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(a)(1)(A)(i) and 3551 et seq.; T. 21, U.S.C. § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* \_\_\_\_\_

_____

*Clerk*

*Bail, $* _____

_____

**Lauren Howard Elbert, Assistant U.S. Attorney (718) 254-7577**